# Exhibit 24

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ANNE ARUNDEL COUNTY

| | |
|---|---|
| CONTIEM f/k/a ORBIS TECHNOLOGIES, INC.<br>180 Admiral Cochrane Drive<br>Annapolis, Maryland 21401<br><br>        *Plaintiff,*<br><br>    v.<br><br>Kim GULLION, an individual<br>18187 Ireglen Path<br>Lakeville, Minnesota 55044<br><br>and<br><br>WRITER RESOURCE LLC<br>18187 Ireglen Path<br>Lakeville, Minnesota 55044<br><br>        *Defendants.* | CASE NO. C-02-CV-23-001022 |

### FIRST AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Contiem f/k/a Orbis Technologies, Inc. ("Orbis" or "Plaintiff"), by and through its undersigned counsel, for its First Amended Complaint against Kim Gullion ("Ms. Gullion" or "Defendant"), pleads and alleges as follows:

### INTRODUCTION

1.      On August 31, 2022, Orbis entered into an Asset Purchase Agreement ("APA") with Writing Assistance, Inc. ("WAI"), whereby Orbis purchased all WAI's rights, title and interest in substantially all of WAI's assets and properties, including goodwill.

2.      Prior to the August 2022 APA, Ms. Gullion spent her entire career at WAI and rose to the rank of Vice President of Sales and Recruiting during her 18-year tenure with WAI.  While

at WAI, Ms. Gullion learned everything she knows about the competitive field in which Orbis (and WAI) operate. In addition, Ms. Gullion was a phantom equityholder in WAI and received a direct economic benefit from Orbis's purchase of substantially all of WAI's assets.

3.    As a result of the APA, WAI paid Ms. Gullion a $320,000 bonus and Orbis offered Ms. Gullion a job with the company, which now owned substantially all the assets of WAI, including but not limited to WAI's proprietary information, goodwill, and "know-how."

4.    As a condition of her new employment with Orbis, Ms. Gullion agreed to the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement (the "Agreement").

5.    Pursuant to the terms of the Agreement, Ms. Gullion agreed for a period of one year following the termination (for any reason) of her employment with Orbis not to work for any company that competes with Orbis. Ms. Gullion also agreed to certain non-disclosure and non-solicitation obligations in the event she was terminated from Orbis.

6.    Ms. Gullion signed the Agreement, among several reasons, in recognition of the substantial time, money, and effort expanded by Orbis in the development of its confidential and proprietary information; the fact that Ms. Gullion would have access to and be personally entrusted with such confidential and proprietary information during her employment with Orbis; the high degree of competition in the field Orbis has chosen to engage in; the specialized knowledge and expertise that Ms. Gullion may develop as a result of her employment with Orbis; and the worldwide nature of Orbis's business.

7.    Despite Ms. Gullion's recognition of the importance of the Agreement, less than two months after she signed the agreement, Ms. Gullion terminated her employment with Orbis with little notice and founded Writer Resource, LLC ('Writer Resource") a company in direct

competition with Orbis, in violation of the express terms of the non-competition and non-disclosure obligations of her Agreement.  Ms. Gullion is the current CEO of Writer Resource.

8.      Ms. Gullion did not stop there.  As founder and CEO of Writer Resource (a company in direct competition with Orbis), Ms. Gullion has solicited Orbis's clients, in violation of the non-solicitation obligations of her Agreement.

9.      As a Vice President reporting directly to the President, Ms. Gullion learned all she could from Orbis, taking the knowledge and information owned by Orbis with her to form a nearly identical business, Writer Resource, in violation of her Agreement.

10.      Orbis considers its proprietary information, trade secrets, and goodwill with its customers, including the proprietary information, trade secrets, and customer goodwill it acquired from WAI, among its most valuable assets and considers its business interests implicated by Ms. Gullion's actions to be of the highest importance to its operations.

11.      Ms. Gullion, however, has failed to acknowledge this reality and refused to cease operating Writer Resource in a manner that violates her continuing obligations to Orbis.

12.      Despite repeated requests by Orbis to resolve this matter, Ms. Gullion has forced Orbis's hand. Orbis now brings this action to stop Ms. Gullion from operating Writer Resource (or any other business) in direct competition with Orbis and in violation of her Agreement and for damages, declaratory, and injunctive relief because of Ms. Gullion's material breaches of the Agreement.

## **PARTIES**

13.      Plaintiff Orbis is a Delaware corporation with its principal place of business located at 180 Admiral Cochrane Drive, Annapolis, Maryland 21401.  Orbis is a global leader in providing services and competent content management solutions to its clients.

14.     Defendant Ms. Gullion is a resident of Lakeville, Minnesota.  Ms. Gullion is a former employee of WAI and Orbis, a former phantom equityholder in WAI and the current Chief Executive Officer of Writer Resource, a direct competitor to Orbis.

15.     Defendant Writer Resource LLC is a Minnesota corporation with its principal place of business located at 18187 Ireglen Path, Lakeville, Minnesota 55044.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the claims alleged herein pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501.

17.     This Court has personal jurisdiction over Defendant Ms. Gullion pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) because Ms. Gullion transacts work in Maryland and caused tortious injury to Orbis in Maryland by acts done in Maryland.  This Court also has personal jurisdiction over Ms. Gullion because she has caused tortious injury to Orbis, a Maryland business, by acts and omissions outside of Maryland and because she solicits business in Maryland and derives substantial revenue from the services she provides in Maryland.

18.     As CEO and Founder of Writer Resource, Ms. Gullion is an agent of Writer Resource.  This Court, therefore, has personal jurisdiction over Defendant Writer Resource pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) through the jurisdictional contacts of Ms. Gullion.  The Court also has personal jurisdiction over Writer Resource because it transacts work in Maryland and caused tortious injury to Orbis in Maryland by acts done in Maryland.  Further, this Court has personal jurisdiction over Writer Resource because it has caused tortious injury to Orbis, a Maryland business, by acts and omissions outside of Maryland and because it solicits business in Maryland and derives substantial revenue from the services it provides in Maryland.

19.     This Court also has personal jurisdiction over Defendants because the Agreement Ms. Gullion breached is governed by Maryland law.

20.     Venue in this Court is proper, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(11) because this is an action for damages against a nonresident individual.

21.     Pursuant to Maryland Rule 2-305, the amount sought in the Amended Complaint exceeds $75,000.

## FACTUAL ALLEGATIONS

### A.     Orbis Acquires Writing Assistance, Inc. and Hires Ms. Gullion

22.     On August 31, 2022, Orbis entered into an APA with WAI, whereby Orbis purchased substantially all of WAI's rights, title and interest in all of WAI's assets and properties, whether real, personal, or mixed, tangible or intangible, including goodwill.  *See* **Ex. A.** [Asset Purchase Agreement by and Among Orbis Technologies, Inc., Writing Assistance, Inc., Scott T. Hartmann and Lori A. Hartmann] §2.1.

23.     WAI is a national staffing firm specializing in the placement of highly qualified writers, designers, and developers and is considered a leading resource for companies in need of qualified professionals.   Specifically, WAI specializes in the placement of technical writers, medical writers, science writers, graphic designers, and instructional designers worldwide.

24.     Importantly, Orbis purchased all of WAI's intellectual property that WAI owned or had the right to use or to which WAI was a party to, including, "the WAI Tracker database with all clients and candidates."  *Id.* §2.1(c); *see also* Exhibit C to the APA at Schedule A.

25.     Prior to the August 2022 APA, Ms. Gullion spent her entire career at WAI and rose to the rank of Vice President of Sales and Recruiting during her 18-year tenure with WAI.

26.     Ms. Gullion was a phantom equityholder in WAI and as a result of the transactions consummated pursuant to the APA, WAI paid Ms. Gullion a $320,000 bonus.

27.    As part of the APA, Ms. Gullion resigned from her employment with WAI.  Orbis extended an offer of employment to Ms. Gullion on August 23, 2022, contingent upon the consummation of the transactions contemplated by the APA, to become the Vice President of Healthcare, Financial and Business Services at Orbis, with a start date of September 1, 2022.  *See* **Ex. B**. [Orbis Offer of Employment to Ms. Gullion].  Ms. Gullion accepted Orbis's offer of employment on August 24, 2022.  *Id.*

B.    **Ms. Gullion Agrees to the Terms of the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement and Begins her Employment with Orbis**

28.    On August 25, 2022, as a condition of her employment with Orbis, Ms. Gullion agreed to the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement (the "Agreement").  *See* **Ex. C.**

29.    In the Agreement, Ms. Gullion agreed for a period of one year following the termination of her employment with Orbis not to work with any company that competes with Orbis, which includes WAI pursuant to the APA.  Specifically, Ms. Gullion agreed, in relevant part, as follows:

> I agree that during the term of my employment with Company, and for one (1) year after my employment ends for any reason, I will not directly or indirectly compete with Company in any way, within the United States, by providing to a person or entity … in competition with Company.  The parties agree that for purposes of this Agreement, a person or entity is in competition with the Company if it provides cloud analytics, text analytics, and content management software and solutions. As such, I accept and agree that these restrictions allow me an adequate number and variety of employment alternatives, based on my varied skills and abilities.

*Id.* §11.

30.    Ms. Gullion agreed to Section 11 of the Agreement, "in recognition of the substantial time, money, and effort expanded by [Orbis] in the development of its confidential and proprietary information; the fact that [Ms. Gullion would] have access to and be personally

entrusted with such confidential and proprietary information during [her] employment with [Orbis]; the high degree of competition in the field [Orbis] has chosen to engage in; the specialized knowledge and expertise that [Ms. Gullion] may develop as a result of [her] employment with [Orbis]; and the worldwide nature of [Orbis's] business." *Id.*

31.    Ms. Gullion additionally agreed to certain non-disclosure provisions in the Agreement:

> All Proprietary Information is the sole property of the Company. I hereby do and will assign to Company all rights, title, and interest I may have or acquire in the Proprietary Information.  At all times, both during my employment by Company and after the termination of such employment, I will keep in confidence and trust all Proprietary Information, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary for the ordinary course of performing my duties as an employee of Company.

> *Id.* § 3.

32.    Proprietary Information is any information in which the Company has any rights, including information relating to the Company's business that has value to the Company, including but not limited to, all client and operational related information to which Ms. Gullion had access in the course and scope of her employment with Orbis or as the result of any client relationships Ms. Gullion developed or enhanced during her employment with the Company.  *Id.* § 2. "Proprietary Information" includes but is not limited to:

> all technical and non-technical information, including patent, copyright, trade secret, and proprietary information, inventions, know-how, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of the Company, and includes, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, customer lists, business forecasts, sales and merchandising and marketing plans and information

> *Id.*

33.    "Proprietary Information also includes proprietary or confidential information of any third party who may disclose such information to the Company or [Ms. Gullion] in the course of the Company's business." *Id.* In any cases where any question exists as to the appropriateness of disclosing information, Ms. Gullion agreed to obtain the prior written consent of Orbis prior to disclosure. *Id.*

34.    The non-disclosure provisions of the Agreement extend to any information purchased, assigned, or otherwise acquired any rights to by Orbis from WAI under the APA, which states that Orbis purchased WAI's goodwill, Ex. A §2.1, as well as "all Intellectual Property that [WAI] owns or has the right to use or which [WAI] is a party." *Id.* §2.1(c). These provisions, therefore, prohibited Ms. Gullion from using the "WAI Tracker database with all clients and candidates." *Id.*; *see also* Exhibit C to the APA at Schedule A.

35.    Ms. Gullion also agreed to return Orbis's property, including Orbis's Proprietary Information, upon termination of her employment with Orbis:

> I acknowledge that all materials furnished to me by the Company shall remain the property of the Company. On termination of my employment with Company for whatever reason, or at the request of Company before termination, I agree to promptly deliver to Company all materials and other information regarding or containing any confidential or Proprietary Information, including all copies, reproductions, summaries or excerpts thereof, then in my possession or control, whether prepared by me or others. I also agree to promptly return, upon termination or at any time upon Company's request, any and all Company property issued to me, including but not limited to computers, cellular phones, keys, and credit cards.

Ex. C § 9.

36.    In addition to the non-competition and non-disclosure provisions, Ms. Gullion agreed to certain non-solicitation provisions:

> [D]uring the term of this Agreement and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt, or damage Company's relationship with any of its customers or customer prospects by soliciting or

8

encouraging others to solicit any of them for the purpose of diversity or taking away business from Company.

*Id.* §10.1.

37.    Finally, Ms. Gullion agreed that:

[D]uring the term of this Agreement and for a period of (1) year after my employment ends, I will not, either directly or indirectly, separately or in occasion with others, (a) interfere with, impair, disrupt or damage Company's business by soliciting, encouraging or attempting to hire any of Company's employees or causing others to solicit or encourage any of Company's employees to discontinue their employment with Company.

*Id.* §10.2.

38.    The terms of the Agreement are governed by the laws of the State of Maryland.  *Id.* §15.

39.    On September 14 and September 15, 2022, Ms. Gullion attended all-day internal client services meetings in Annapolis, Maryland hosted by the Senior Vice President of Orbis. During the September 14, 2022 and September 15, 2022 meetings, seventeen executive-level and senior employees of Orbis, including Ms. Gullion, discussed improving company processes, clients and client services, revenue, company objectives and priorities, sales, product roadmaps, resource management, potential bottlenecks, internal review and submittal processes for statements of work, amendments, and Customer Care agreements, and other product and company information.

40.    The information discussed at the September 14, 2022 and September 15, 2022 Annapolis meetings was not generally known to or readily ascertainable by the public; nor were all Orbis employees privy to or aware of the information discussed at the meetings Ms. Gullion attended.  The September 14, 2022 and September 15, 2022 meetings were limited to small number of senior Orbis employees to ensure that the information discussed, and strategic conclusions

made, remained confidential and did not make their way to a public forum.  At these meetings, Ms. Gullion acquired a wealth proprietary information.

41.    Orbis operates in a highly competitive field.  *See* Ex. C §11 (noting "the high degree of competition in the field [Orbis] has chosen to engage in").  Orbis also expended substantial time, money, and effort in the development of the confidential and proprietary information discussed in Annapolis.  *Id.*  If the information discussed at the September 14, 2022 and September 15, 2022 meetings in Annapolis, Maryland was discovered by any competitor of Orbis, the competitor could use such information to undercut Orbis's pricing, giving themselves an economic advantage and/or the ability improve the commercial value of their own products and services.  Ms. Gullion acknowledged as much in her Agreement.  *See id.* §10.1 ("I acknowledge that information about the Company's customers is confidential and constitutes trade secrets."); *id.* §10.2 ("I acknowledge that information about the Company's employees is confidential and constitutes trade secrets.").  The information discussed at the September 14 and September 15 meetings also included the personal insights and analysis of the seventeen of executive-level and senior employees of Orbis in attendance.

**C.    Ms. Gullion Leaves Orbis to Form Writer Resource by Improperly Using Orbis's Intellectual Property and Trade Secrets**

42.    On October 14, 2022, with little to no warning, Ms. Gullion submitted her formal notice of resignation to Orbis and agreed that her last day with Orbis would be October 21, 2022.

43.    On October 17, 2022, the CEO of Orbis requested that Ms. Gullion prepare a memorandum covering each client Ms. Gullion oversaw, including the point of contact for each client, summary of the client history, expectations for 2023, and links to the client tracker.

44.    That same day (October 17, 2022), Ms. Gullion advised a liaison to Orbis's client, Hormone Zone, that she was leaving Orbis but exclaimed, "let's keep in touch!"  As alleged *infra*,

upon information and belief, as CEO and Founder of Writer Resource, Ms. Gullion used Orbis's Proprietary Information and trade secrets to solicit Hormone Zone for the purpose of diverting and taking away business from Orbis.

45.     On October 19, 2022, Ms. Gullion wrote to her point of contact at Scimitar that she "hope to cross paths again in the future" and provided a phone number to contact her "if there's anything [Scimitar] needs [after her last day]."  As alleged *infra*, upon information and belief, as CEO and Founder of Writer Resource, Ms. Gullion used Orbis's Proprietary Information and trade secrets to solicit Scimitar for the purpose of diverting and taking away business from Orbis.

46.     Additionally, on October 19, 2022, a former WAI employee wrote to Ms. Gullion, "Tony at Pharmavite told me you are leaving."  Ms. Gullion responded, included her personal email address, and exclaimed, "please reach out to me anytime and stay in touch."  As alleged *infra*, upon information and belief, as CEO and Founder of Writer Resource, Ms. Gullion used Orbis's Proprietary Information and trade secrets to solicit Pharmavite for the purpose of diverting and taking away business from Orbis.

47.     Significantly, around 6:50pm on October 20, 2022 (*i.e.*, the evening before Ms. Gullion's departure from Orbis), Ms. Gullion downloaded several documents and folders from Orbis's server including but not limited to the following: (i) her email mailbox; (ii) a "drafts" folder; (iii) an "archive" folder; (iv) a "deleted items" folder, and (v) an offline address book.  Ms. Gullion also downloaded the calendars of several Orbis employees, including the calendar of the Executive Assistant to the President & CEO of Orbis.  Upon information and belief, Ms. Gullion took the information she downloaded from the server (which is Proprietary Information of Orbis) with her to Writer Resource and is using such information as the founder and CEO of Writer

Resource in violation of the non-disclosure provisions of her Agreement. Ms. Gullion has not returned to Orbis the information she downloaded from Orbis's server.

48.     Orbis's server is in the State of Maryland. Upon information and belief, Ms. Gullion knowingly and improperly accessed Orbis's server the evening before her departure from Orbis to download Orbis's Proprietary Information, used the Proprietary Information to form Writer Resource, and used the Proprietary Information to solicit Orbis's clients for the purpose of diverting or taking away business from Orbis. Ms. Gullion's conduct violated both the non-disclosure and non-solicitation provisions of the Agreement.

49.     On October 21, 2022, Ms. Gullion provided the information requested on October 17 (*see supra* ¶ 43) for Orbis's clients she oversaw in the Healthcare and Business Services verticals, including but not limited to the following: Scimitar Consulting, the Kinetix Group, TerumoBCT, AstraZeneca, Medimmune, Rochester Regional Health, American Institutes for Research, Waters Corporation, Shasta (Hawaii-Western Management), Inspire Medical Systems, Athena Labs, Dignity Heath, the Hormone Zone, Pharmavite, LLC, and MedPro Group.

50.     That same day (October 21, 2022) – less than two months after signing the Agreement and receiving her $320,000 transaction bonus – Ms. Gullion terminated her employment with Orbis.

51.     Shortly after terminating her employment with Orbis, in October 2022, Ms. Gullion founded Writer Resource, a direct competitor of Orbis/WAI. Ms. Gullion is currently the CEO of Writer Resource.

52.     Prior to founding Writer Resource, Ms. Gullion held only one other job throughout her entire career: WAI, where she rose the ranks to senior executive and was a phantom equityholder.

53.     Orbis then purchased substantially all WAI's assets, which resulted in Ms. Gullion becoming an employee of Orbis.

54.     When Ms. Gullion became employed with Orbis, she signed the Agreement as a means for Orbis to protect the value of the assets it just purchased, which included WAI's ATS tracker database.

55.     Ms. Gullion's entire industry "know-how" is based on WAI's Proprietary Information, which Orbis now owns.  Ms. Gullion left Orbis in October 2022 and used Orbis's and WAI's Proprietary Information, including the "know-how" she developed at WAI, to form Writer Resource.

56.     Upon information and belief, Ms. Gullion also used the ATS tracker database, Orbis's marketing materials Orbis's pricing, Orbis's contracts, Orbis's legal documents, and Orbis's templates to form Writer Resource.

57.     The information contained in the ATS tracker database, Orbis's marketing materials, Orbis's contracts, Orbis's legal documents, Orbis's pricing, and Orbis's templates is not generally known to or readily ascertainable by the public; nor are all Orbis employees privy to or aware of the information contained in these documents.  As an example, access to the information contained in the ATS tracker database (which is the product, among numerous things, of goodwill developed over time) is limited to certain employees.  Only Ms. Gullion and the sales team had access to the ATS tracker database.  The same is true for Orbis's marketing materials, Orbis's contracts, Orbis's legal documents, Orbis's pricing, and Orbis's templates; access to such materials were limited to a certain faction of Orbis employees.

58.     Additionally, Orbis took steps to ensure the information in Paragraph 56 remained secret.  All Orbis employees are required to sign a handbook explaining the proper methods of

handling Orbis's confidential and proprietary information to ensure its employees do not improperly disclose Orbis's intellectual property. Further, all information requires multi-factor authentication to access. Orbis's employees also signed an agreement like Ms. Gullion's agreement, which contained similar non-disclosure provisions.

59.    Orbis operates in a highly competitive field. *See* Ex. C. §11 (noting "the high degree of competition in the field the Company has chosen to engage in"). Orbis also expended substantial time, money, and effort in the development of the ATS tracker database, its marketing materials, contracts, legal documents, pricing, and templates. *Id.* If these materials, which are not subject to constant change, were discovered by any competitor of Orbis, the competitor could use such information to undercut Orbis's pricing and can offer similar services under similar terms and conditions at a lower price than Orbis. Likewise, if Orbis's competitors had access to its ATS Tracker database, it could use the list to pursue Orbis's customers. In other words, competitors of Orbis could improve the commercial value of its own products using Orbis's Proprietary Information.

60.    Surely, in October 2022 (just days after Ms. Gullion left Orbis), Writer Resource had not been in the business long enough to develop its own client lists, marketing materials, contracts, legal documents, pricing, and templates.

61.    Upon information and belief, despite agreeing to keep in confidence and trust Orbis's Proprietary Information (Ex. C. § 3), acknowledging that information about Orbis's customers is confidential and constitute trade secrets (*id.* § 10.1), acknowledging the high degree of competition in the field Orbis operates in (*id.* § 11), and acknowledging the substantial time, money, and effort expanded by Orbis in the development of its confidential and proprietary information (*id.*), Ms. Gullion used: (i) the Proprietary Information she acquired during the

September 14 and September 15 meetings in Annapolis, Maryland (ii) the "know-how" she developed at WAI (which Orbis now owns), (iii) the Proprietary Information she improperly downloaded from Orbis's Maryland server, (iv) the ATS Tracker database, (v) Orbis's marketing materials, (vi) Orbis's contracts, (vii) Orbis's legal documents, (viii) Orbis's pricing, and (ix) Orbis's templates to form Writer Resource.  Such information also constitutes trade secrets of Orbis.

62.     In using Orbis's Proprietary Information and trade secrets to form Writer Resource, Ms. Gullion did not obtain the written consent of Orbis, nor did she obtain the prior written consent of Orbis in any instance, surely of which there were many, where a question existed as to the appropriateness of disclosing information.

63.     As further evidence that Ms. Gullion used Orbis's Proprietary Information and trade secrets to form Writer Resource, like Orbis/WAI, Writer Resource "provide[s] clients with a wide range of services to cover all their needs," including, "Technical Writing, Medical Writing, Training Development, and Illustration."  A comparison of Writer Resource's and WAI's websites demonstrate that Writer Resource offers nearly identical services to WAI:

| Writer Resource | WAI/Orbis |
| --- | --- |
| Illustration / Graphic Design | Web Designer / Graphic Illustrators |
| Technical Writing | Technical Writers |
| Medical Writing | Medical Writers |
| Editing/Editor Service | Editors |
| Training Development | Training Writers / Instructional Designers |
| | Marketing Writers |

64.    Writer Resource's description of the various services offered are strikingly similar to the description of services offered by WAI.  As an illustrative example, a comparison of Writer Resource's description of its technical writing services is nearly identical to WAI's description of its technical writing services:

| Writer Resource | WAI/Orbis |
| --- | --- |
| SOPs | Standard Operating Procedures |
| Manuals | User Guides |
| Hardware and Software Documentation | Software Documentation<br><br>Hardware Documentation |
| Operational Documents | Operator Manuals |
| Maintenance Manuals | |
| Quality Assurance / Control Documentation | ISO 9000 |
| Policies and Procedures | Policy & Procedure Writing |
| Disaster Recovery Documentation | Disaster Recovery |
| Processes | Process Documentation |
| RFP, RFQ, RFI and Proposal Writing | Response to Technical RFPs<br><br>Technical Proposals<br><br>Proposals |
| Government Documentation | |
| | Installation Guides |
| | Technical Papers |

65.    As another illustrative example, a comparison of the Parties' descriptions of their illustration services are almost identical as well:

| Writer Resource | WAI/Orbis |
|---|---|
| Technical Illustration and Graphics | Patent Drawings |
| AutoCAD Drawings | Computer-Aided Design (CAD) |
| 3D Animation | |
| Logo Design | Logos and Corporate Identity Design |
| Engineering Illustrations | Engineering Illustrations |
| Photography | |
| | Design Icons |
| | Packaging and Signage |
| | Electronic Illustration |

66.     The descriptions of the other services provided by the Parties are no different.

67.     By founding Writer Resource and acting as Writer Resource's CEO, Ms. Gullion materially breached the non-disclosure provisions of the Agreement (Ex. C § 3) and misappropriated Orbis's trade secrets.

**D.    Writer Resource Competes with Orbis in Violation of the Agreement**

68.     Writer Resource competes with Orbis, in violation of the non-competition provision of Ms. Gullion's Agreement.  *See* Ex. C § 11 ("[A] person or entity is in competition with [Orbis] if it provides *cloud analytics, text analytics*, and content management software and solutions.") (Emphasis Added).

69.     On its website, Writer Resource advertises that "[f]rom network engineering, internet schema, hardware, software, application development, *artificial intelligence, and machine learning*, to the project management that supports it, we have writers, editors, and

illustrators to support all of the documentation needed in this fast-paced industry." (Emphasis Added).

70.     Upon information and belief, text analytics (which Writer Resource is prohibited from competing in, pursuant to the terms of the Agreement) utilizes artificial intelligence and machine learning (which Writer Resource advertises it serves its clients in).  Similarly, cloud analytics (which Writer Resource is prohibited from competing in, pursuant to the terms of the Agreement) utilities artificial intelligence (which Writer Resource advertises it serves its clients in).

71.     Writer Resource, therefore, is in competition with Orbis, and Ms. Gullion is in violation of the non-competition provision of the Agreement.

**E.**     **Ms. Gullion Obtains Business for her Newly Formed Company by Improperly Using Orbis's Intellectual Property and Trade Secrets to Solicit Orbis's Customers and Employees**

72.     When Writer Resource was formed by Ms. Gullion, several Orbis clients terminated their relationship with Orbis, including but not limited to the following clients:

    a.   Sinclair Oil Corporation

    b.   CerroWire

    c.   Mars Retail Group, LLC

    d.   American Institute for Research

    e.   American Society of Hematology (ASH)

    f.   Analogic Corporation

    g.   Angel Medical

    h.   AstraZeneca

    i.   Medimmune

    j.   Athena Labs

k.  BioTel Research (BioTel Research)

l.  BACA Systems (BACA Systems)

m.  B.Braun Medical Inc.

n.  Dignity Health LLC

o.  HartMobility

p.  Infiniti Health LLC

q.  Inspire Medical Systems

r.  MedPro Group Inc.

s.  Pharmavite

t.  Rochester Regional Health

u.  Scimitar Consulting

v.  Shasta (Hawaii Western)

w.  Terumo Blood and Cell Technologies, Inc.

x.  The Hormone Zone

y.  The Kinetix Group

z.  Waters

73.    Upon information and belief, despite agreeing to keep in confidence and trust Orbis's Proprietary Information (Ex. C § 3), acknowledging that information about Orbis's customers is confidential and constitute trade secrets (*id.* § 10.1), acknowledging the high degree of competition in the field Orbis operates in (*id.* § 11), and acknowledging the substantial time, money, and effort expanded by Orbis in the development of its confidential and proprietary information (*id.*), Ms. Gullion used: (i) the Proprietary Information she acquired during the September 14 and September 15 meetings in Annapolis, Maryland (ii) the "know-how" she

developed at WAI (which Orbis now owns), (iii) the Proprietary Information she improperly downloaded from Orbis's Maryland server, (iv) the ATS Tracker database, (v) Orbis's marketing materials, (vi) Orbis's contracts, (vii) Orbis's legal documents, (viii) Orbis's pricing, and (ix) Orbis's templates, to damage and/or disrupt Orbis's relationship with its clients listed in Paragraph 72 by soliciting and encouraging those clients to end their relationship with Orbis.  Ms. Gullion did so for the purpose of diverting and taking away business from Orbis.

74.     While at Orbis, Ms. Gullion managed the clients listed in Paragraph 72.  According to revenue projections made by Ms. Gullion while at Orbis, the total revenue generated by the clients listed in Paragraph 72 for the last five months of 2022 was over $600,000.

75.     On October 21, 2022 –  right before Ms. Gullion used Orbis's confidential and Proprietary Information to solicit Orbis's clients in violation of the Agreement – Ms. Gullion provided a memorandum to the CEO of Orbis containing updates on the following Orbis clients: Scimitar Consulting, the Kinetix Group, TerumoBCT, AstraZeneca, Medimmune, Rochester Regional Health, American Institutes for Research, Waters Corporation, Shasta (Hawaii-Western Management), Inspire Medical Systems, Athena Labs, Dignity Heath, the Hormone Zone, Pharmavite, LLC, and MedPro Group.

76.     Ms. Gullion acknowledged that information about Orbis's clients is confidential and constitute trade secrets.  Ex. C § 10.1.  Upon information and belief, Ms. Gullion used the information contained in the October 21 memorandum to solicit Orbis's clients for the purpose of diverting and taking away business from Orbis.

77.     Additionally, the following Orbis clients that Ms. Gullion solicited are based in the State of Maryland or have an office located in the State of Maryland: American Institute for Research, AstraZenca, Medimmune, and BioTel Research.  According to revenue projections

made by Ms. Gullion while at Orbis, the total revenue generated by these four clients for the last five months of 2022 was over $140,000.

78.     In using Orbis's Proprietary Information and trade secrets to solicit Orbis's clients for the purpose of diverting and taking business away from Orbis, Ms. Gullion did not obtain the written consent of Orbis, nor did she obtain the prior written consent of Orbis in any instance, surely of which there were many, where a question existed as to the appropriateness of disclosing information, nor has she returned to Orbis any of the Proprietary Information she is using.

79.     By using Orbis's Proprietary Information and trade secrets to solicit Orbis's clients for the purpose of diverting and taking business away from Orbis, Ms. Gullion materially breached non-solicitation (Ex. C § 10.1) and non-disclosure provisions (*id.* §§ 3, 9) of the Agreement.  By soliciting Orbis's clients for the purpose of diverting and taking business away from Orbis, Ms. Gullion also misappropriated Orbis's trade secrets.

80.     Further, on August 26, 2022, Ms. Gullion wrote to John Dolan, a former Sales Director at Orbis, that she "didn't get the txt can you try again?" and provided her cell phone number.

81.     A few weeks later, on October 19, 2022, Ms. Gullion emailed Mr. Dolan (subject line: "AIR") and asked if he had "a few minutes to discuss?"  Mr. Dolan responded to Ms. Gullion and provided his cell phone number.

82.     Around the same time Writer Resource was formed by Ms. Gullion, Mr. Dolan terminated his employment with Orbis.  Upon information and belief, as founder and CEO of Writer Resource, Ms. Gullion damaged Orbis's business by soliciting Mr. Dolan, a then-employee of Orbis.  Upon information and belief, Mr. Dolan now works for Writer Resource.

83.    By soliciting Mr. Dolan, Ms. Gullion materially breached the non-solicitation provision of the Agreement (Ex. C. § 10.2).

**F.    Orbis Informs Ms. Gullion of her Material Breaches of her Agreement and Attempts to Reach Resolution Without Seeking Relief in this Court**

84.    On December 22, 2022, undersigned counsel wrote to Ms. Gullion and advised Ms. Gullion that Writer Resource is a direct competitor of Orbis and that her employment with Writer Resource directly violates her continuing legal obligations to Orbis, including her non-competition and non-disclosure obligations under the Agreement.  *See* **Ex. D** at 1 [December 22, 2022, Letter from Orbis to Ms. Gullion].

85.    In the letter, Orbis informed Ms. Gullion that its "proprietary information, trade secrets, and goodwill with its customers are among its most valuable assets," and that it considered its "business interests implicated by [Ms. Gullion's] actions to be of the highest importance to its operations." *Id.* at 2.

86.    Orbis requested that Ms. Gullion "immediately cease engaging in a business that is in direct competition with Orbis in violation of the non-competition provision of [her] Agreement and desist from engaging in any other activity in the future that is in violation of any provision of [her] Agreement." *Id.*

87.    Orbis further requested that Ms. Gullion provide, no later than Friday, December 30, 2022, "a sworn, written verification stating: (1) the date you provided Writer Resource with a copy of your Agreement, (2) your agreement to comply with your continuing obligations to Orbis, including those outlined herein, (3) confirmation that you have returned, and are no longer in possession of, any Orbis Confidential and Proprietary Information, and (4) confirmation that you are not in possession of, and have not wrongfully disclosed, any Orbis Confidential or Proprietary Information." *Id.*

88.    Ms. Gullion, however, did not provide a sworn verification at all, much less the sworn written verification as requested by Orbis.  Rather, Ms. Gullion's counsel called undersigned counsel on December 27 and followed up with an email to undersigned counsel on December 28, where he seemingly confirmed the allegations *supra*:

> As we discussed, Ms. Gullion started a staffing agency that does not violate the [Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement ("**Agreement**")] between the parties.  She is not using any property that belongs to, or belonged to Orbis.  She understands the Agreement and the specific competition outlined in the Agreement and has no interest in violating it.  She has enough business and is not interested in a legal matter.  ***Ten or more employees left in a short amount of time and it is understandable that Orbis may think that Ms. Gullion is working with former employees***, she is not.  Lastly, if anything specific comes up please reach out to me immediately so I may address it with Ms. Gullion as she has no interest in violating the Agreement.

(Emphasis Added).

89.    On February 2, 2023, Orbis sent a second letter to Ms. Gullion's counsel where it reiterated the requests made in its December 22 letter.  *See* **Ex. E** [February 2, 2023, Letter from Orbis to Ms. Gullion].

90.    Again, Ms. Gullion failed to provide the sworn written verification requested by Orbis and failed to provide any sworn written verification at all.  Instead, on February 6, 2023, Ms. Gillion's lawyer responded by letter, among several things, by making baseless accusations against Orbis and stating that "Ms. Gullion has adhered to the Agreement."  *See* **Ex. F** [February 6, 2023, Letter from Ms. Gullion to Orbis].

91.    On March 6, 2023, Orbis responded and took a different approach to potential resolution by asking that Ms. Gullion provide undersigned counsel on an "attorneys' eyes only" basis a list of Writer Resource's clients, including all signed statements of work, contracts, and templates by Friday March 10, so that undersigned counsel could verify that Ms. Gullion has not violated any terms of her Agreement.  *See* **Ex. G** [March 6, 2023, Letter from Orbis to Ms.

Gullion].  Orbis also put Ms. Gullion on notice of its intent to file a lawsuit: "Orbis is prepared to

file a lawsuit against Ms. Gullion for, among several things, injunctive relief and damages as a

result of Ms. Gullion's material breaches of the Agreement, interference with prospective business

relations, and misappropriation of Orbis's trade secrets." *Id.* at 2.

92.     In a telling admission, and further evidence that Ms. Gullion is soliciting Orbis's

clients in violation of the Agreement, Ms. Gullion responded on March 9, 2023, refusing to provide

undersigned counsel with the information it had requested and stating the following:

> ***To the best of my knowledge, I, and in turn Writer's Resource, have no contracts
> with any contracted Clients that Orbis had when they acquired WAI or when I
> left Orbis.***

*See* **Ex. H** [March 9, 2023, Letter from Ms. Gullion to Orbis] (Emphasis Added).

93.     Orbis responded on March 31, 2023, noting that Ms. Gullion's March 9 response

raised more questions than answers:

> First, Ms. Gullion's response only states that Writer's Resource is not *contracting* with
> Orbis's customers.  It does not state that Writer's Resource is not doing business, has not
> done business, or is not soliciting any of Orbis's customers, which would all be violations
> of her Agreement.  Second, Ms. Gullion's response incorrectly limits Orbis's clients to
> those who were clients at the time Orbis acquired WAI and those who Orbis had when Ms.
> Gullion departed the Company.  It does not contemplate prospective customers of Orbis or
> customers that Orbis's [sic] contracted with *after* the acquisition of WAI, both of which
> are covered by Ms. Gullion's Agreement.  Ms. Gullion's response, therefore, appears to be
> an admission that Ms. Gullion is actively violating the terms of her Agreement.  What's
> more, Ms. Gullion's response wholly ignored Orbis's request in its March 6 letter.

*See* **Ex. I** [March 31, 2023, Letter from Orbis to Ms. Gullion] (Emphasis in Original).  Orbis again

put Ms. Gullion on notice of its intent to file a lawsuit.  *Id.* at 2.

94.     Ms. Gullion responded on April 24, 2023, denying (once again) any wrongdoing

and declining (once again) to provide any information to undersigned counsel to allow them to

verify Ms. Gullion's continued assertions that she is not in violation of the Agreement.  **Ex. J**

[April 24, 2023, Letter from Ms. Gullion to Orbis].  Ms. Gullion further made clear that she "will not respond to any further letters."  *Id.*

95.      Orbis now brings this action to stop Ms. Gullion from operating Writer Resource (or any other business) in direct competition with Orbis and in violation of her Agreement and for damages, declaratory, and injunctive relief as a result of Ms. Gullion's material breaches of the Agreement, including the non-disclosure and non-solicitation provisions of the Agreement.

## FIRST CLAIM FOR RELIEF

### (Material Breach of Ms. Gullion's Agreement)

96.      Orbis incorporates by reference the allegations in paragraphs 1-95 above.

97.      The Agreement is an enforceable and valid contract.

98.      In November 2022, Ms. Gullion founded Writer Resource, a company in direct competition with Orbis, in violation of § 11 (covenant not to compete) of the Agreement.  Ms. Gullion is currently the CEO of Writer Resource.

99.      Ms. Gullion used Orbis's Proprietary Information to form Writer Resource.  Ms. Gullion did not obtain the written consent of Orbis, nor did she obtain the prior written consent of Orbis in any instance where a question existed as to the appropriateness of disclosing information.

100.      Ms. Gullion also used Orbis's Proprietary Information to solicit Orbis's clients for the purpose of diverting and taking business away from Orbis.  Ms. Gullion did not obtain the written consent of Orbis, nor did she obtain the prior written consent of Orbis in any instance where a question existed as to the appropriateness of disclosing information.

101.      Ms. Gullion's actions violate her continuing obligations to Orbis under the Agreement.

102.    Ms. Gullion used Orbis's Proprietary Information in violation of § 3 (non-disclosure) of the Agreement.  Additionally, upon termination of her employment with Orbis, Ms. Gullion did not return all confidential and Proprietary Information to Orbis in violation of § 9 (return of company property) of the Agreement.

103.    By soliciting Orbis's clients for the purpose of diverting or taking away business from Orbis, Ms. Gullion violated § 10.1 (non-solicitation of customers or prospects) of the Agreement.

104.    Ms. Gullion further solicited an employee of Orbis in violation of § 10.2 (non-solicitation of Company's employees) of the Agreement.

105.    Ms. Gullion signed in the Agreement, in part, as "recognition of the substantial time, money, and effort expanded by [Orbis] in the development of its confidential and proprietary information; the fact that [Ms. Gullion would] have access to and be personally entrusted with such confidential and proprietary information during [her] employment with [Orbis]; the high degree of competition in the field [Orbis] has chosen to engage in; the specialized knowledge and expertise that [Ms. Gullion] may develop as a result of [her] employment with [Orbis]; and the worldwide nature of [Orbis's] business."  Ex. C § 11.

106.    Put differently, Orbis's "proprietary information, trade secrets, and goodwill with its customers are among its most valuable assets."  Ex. E at 3.

107.    Ms. Gullion's material breaches of the Agreement have affected the purpose of the Agreement in an important and vital way, such that it defeats the object of the parties entering into the Agreement.

## SECOND CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets in Violation of Maryland Uniform Trade Secrets Act against Defendants Gullion and Writer Resource)**

108.    Orbis incorporates by reference the allegations in paragraphs 1-107 above.

109.    The Proprietary Information Ms. Gullion acquired during the September 14 and September 15 meetings in Annapolis, Maryland, the "know-how" she developed at WAI (which Orbis now owns), the Proprietary Information she improperly downloaded from Orbis's Maryland server, the ATS Tracker database, Orbis's marketing materials, Orbis's contracts, Orbis's legal documents, Orbis's pricing, and Orbis's templates all constitute trade secrets as they all derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and because Orbis took reasonable efforts under the circumstances to maintain their secrecy.

110.    Ms. Gullion used and disclosed Orbis's trade secrets, without express or implied consent by Orbis, to form Writer Resource and to solicit Orbis's clients.

111.    Ms. Gullion misappropriated Orbis's trade secrets by breaching her duty to maintain their secrecy.  Orbis did not provide written consent to Ms. Gullion to use its trade secrets or Proprietary Information as required by the Agreement.

112.    To extent the misappropriated information alleged *supra* is not a trade secret, Ms. Gullion nevertheless breached the non-disclosure provisions of the Agreement.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment)

113.    Orbis incorporates by reference the allegations in paragraphs 1-112 above.

114.    There is actual, definite and concrete controversy of sufficient immediacy and reality between the parties as to their obligations and rights under the Agreements.  As such, the issuance of a declaratory judgment in Orbis's favor is warranted.

115.    Orbis seeks a declaratory judgment that the Agreement is valid and enforceable.

116.    Orbis further seeks a declaratory judgment that Ms. Gullion is prohibited from using or disclosing Orbis's proprietary and confidential information at any time and, until October 21, 2023, is prohibited from soliciting any current or prospective clients of Orbis, including clients with whom Ms. Gullion worked with and had obtained confidential information about during her employment with WAI or Orbis.

117.    Orbis also seeks a declaratory judgment that the information alleged *supra* constitute trade secrets and that Defendants misappropriated such trade secrets.

118.    Issuance of a declaratory judgment will serve to settle the rights and other legal relations that exist between the parties and eliminate uncertainty as to the scope and content of the present legal obligations.

## FOURTH CLAIM FOR RELIEF

### (Injunctive Relief against Defendants Gullion and Writer Resource)

119.    Orbis incorporates by reference the allegations in paragraphs 1-118 above.

120.    As Founder and CEO of Writer Resource, Ms. Gullion has caused and will continue to cause Orbis irreparable harm and injury, in that Ms. Gullion has engaged in a business that is in direct competition with Orbis and has solicited Orbis's clients using Orbis's Intellectual Property, all in violation of her Agreement.

121.    Orbis has no adequate remedy at law to prevent and compensate for the continuing wrong and irreparable injury caused by Ms. Gullion's acts and omissions.

122.    Considering the irreparable harm and injury to Orbis by Ms. Gullion operating a business in direct competition with Orbis in violation of her Agreement, as compared to enforcing the narrowly tailored terms of the Agreement, a remedy in equity is warranted.

123.    Preventing Ms. Gullion from operating Writer Resource in a manner that violates her Agreement for one year as she contracted to will not disserve the public interest.

124.     Orbis further requests injunctive relief against Defendants pursuant to the Maryland Uniform Trade Secrets Act for actual and/or threatened misappropriation.

125.     Orbis is likely to succeed on the merits of its misappropriation of trade secrets claim against Defendants.

126.     Upon information and belief, unless Defendants are enjoined from using Orbis's trade secrets, they will continue to do so moving forward.  Even if Defendants undertake an effort to delete all Orbis's trade secrets, that does not eliminate the risk of future use and danger of a recurrent violation.

127.     Defendants continued use of Orbis's trade secrets will continue to damage Orbis's competitive market position.  Additionally, Defendants continued use of Orbis's trade secrets will continue to divert business away from Orbis, and effectively, curtail Orbis's operations.

128.     Further, the harm that Orbis is suffering is actual and imminent.   Allowing Defendants to continue to use Orbis's trade secrets will cause Orbis further harm that is incapable of remedy.   Given this, Orbis faces the prospect of suffering irreparable harm through the continued disclosure by Defendants of Orbis's trade secrets and through Defendants' improper use of Orbis's Proprietary Information to form Writer Resource and solicit Orbis's clients.

129.     Defendants claim they have not used and are not using Orbis's trade secrets.  *See supra* ¶¶ 84-94.  Given Defendants' claims, enjoining their further use of Orbis's trade secrets will not cause Defendants any harm.

130.      Granting an injunction is in the public's interest to protect trade secrets and prevent unfair business practices.  The injunction requested only restrains Defendants from using misappropriated trade secrets and Proprietary Information while operating their competing business; it does not enjoin Defendants from operating Writer Resource wholesale.

## PRAYER FOR RELIEF

**WHEREFORE,** Orbis requests that the Court:

A.    Enter a preliminary and permanent injunction restraining Ms. Gullion and Writer Resource from operating its business (or engaging in any other business) in a manner inconsistent with the terms of the Agreement;

B.    Enter a preliminary and permanent injunction restraining Ms. Gullion and Writer Resource from misappropriating Orbis's trade secrets;

C.    For an expedited hearing and issuance of a preliminary injunction preventing continuing injury to Orbis during the course of these proceedings;

D.    Award compensatory damages for the harm caused and lost profits resulting from Ms. Gullion's material breaches of the Agreement;

E.    Award compensatory damages for the harm caused and lost profits from Ms. Gullion's and Writer Resource's misappropriation of trade secrets;

F.    Issue a declaratory judgment that the Agreement is valid and enforceable;

G.    Issue a declaratory judgment that Ms. Gullion is prohibited from using or disclosing Orbis's proprietary and confidential information at any time and, until October 21, 2023, is prohibited from soliciting any current or prospective clients of Orbis, including clients with whom Ms. Gullion worked with and had obtained confidential information about during her employment with WAI or Orbis;

H.    For court costs, other costs associated with these proceedings and reasonable attorneys fees;

I.    For such other and further relief as the Court may deem just and proper and the nature of this proceedings require.

Dated: August 23, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Daniel E. Larkins*_____
Daniel E. Larkins (AIS No. 1912180005)
500 Eighth Street NW
Washington, DC 20004
T: (202) 799-4203
F: (202) 799-5000
daniel.larkins@us.dlapiper.com

Marc D. Katz (admitted *pro hac vice*)
1900 N. Pearl St., Ste. 2200
Dallas, TX 75201
T: (214) 743-4534
F: (214) 743-4545

*Attorneys for Contiem f/k/a/ Orbis Technologies, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff Contiem f/k/a Orbis Technologies, Inc. requests that the captioned case and all claims asserted therein be tried by a Jury.

Dated: August 23, 2023                          Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Daniel E. Larkins*
Daniel E. Larkins (AIS No. 1912180005)
500 Eighth Street NW
Washington, DC 20004
T: (202) 799-4203
F: (202) 799-5000
daniel.larkins@us.dlapiper.com

Marc D. Katz (admitted *pro hac vice*)
1900 N. Pearl St., Ste. 2200
Dallas, TX 75201
T: (214) 743-4534
F: (214) 743-4545

*Attorneys for Contiem f/k/a/ Orbis Technologies, Inc.*