## IN THE CIRCUIT COURT OF MARYLAND
## FOR ANNE ARUNDEL COUNTY

| | |
|---|---|
| CONTIEM f/k/a ORBIS TECHNOLOGIES, INC.<br>180 Admiral Cochrane Drive<br>Annapolis, Maryland 21401<br><br>        *Plaintiff,*<br><br>   v.<br><br>Kim GULLION, an individual<br>18187 Ireglen Path<br>Lakeville, Minnesota 55044<br><br>and<br><br>WRITER RESOURCE LLC<br>18187 Ireglen Path<br>Lakeville, Minnesota 55044<br><br>        *Defendants.* | CASE NO.    C-02-CV-23-001022 |

### COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Contiem f/k/a Orbis Technologies, Inc. ("Orbis" or "Plaintiff"), by and through its undersigned counsel, for its complaint against Kim Gullion ("Ms. Gullion") and Writer Resource LLC ("Writer Resource," together with Ms. Gullion, "Defendants"), pleads and alleges as follows:

### INTRODUCTION

1.     On August 31, 2022, Orbis entered into an Asset Purchase Agreement ("APA") with Writing Assistance, Inc. ("WAI"), whereby Orbis purchased all of WAI's rights, title and interest in substantially all of WAI's assets and properties, including goodwill.

2.      Prior to the August 2022 APA, Ms. Gullion spent her entire career at WAI and rose to the rank of Vice President of Sales and Recruiting during her 18-year tenure with WAI. While at WAI, Ms. Gullion learned everything she knows about the competitive field in which Orbis (and WAI) operate. In addition, Ms. Gullion was a phantom equityholder in WAI and received a direct economic benefit from Orbis' purchase of substantially all of WAI's assets.

3.      As a result of the APA, WAI paid Ms. Gullion a $320,000 bonus and Orbis offered Ms. Gullion a job with the company, which now owned substantially all the assets of WAI, including but not limited to WAI's proprietary information, customer & staffing database, goodwill, and "know-how."

4.      As a condition of her new employment with Orbis, Ms. Gullion agreed to the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement (the "Agreement").

5.      Pursuant to the terms of the Agreement, Ms. Gullion agreed for a period of one year following the termination (for any reason) of her employment with Orbis not to work for any company that competes with Orbis. Ms. Gullion also agreed to certain non-disclosure and non-solicitation obligations in the event she was terminated from Orbis.

6.      Ms. Gullion signed the Agreement, among several reasons, in recognition of the substantial time, money, and effort expanded by Orbis in the development of its confidential and proprietary information; the fact that Ms. Gullion would have access to and be personally entrusted with such confidential and proprietary information during her employment with Orbis; the high degree of competition in the field Orbis has chosen to engage in; the specialized knowledge and expertise that Ms. Gullion may develop as a result of her employment with Orbis; and the worldwide nature of Orbis's business.

7.     Despite Ms. Gullion's recognition of the importance of the Agreement, less than two months after she signed the agreement, Ms. Gullion terminated her employment with Orbis with little notice and founded Writer Resource, a company in direct competition with Orbis, in violation of the express terms of the non-competition and non-disclosure obligations of her Agreement. Ms. Gullion is the current CEO of Writer Resource.

8.     Ms. Gullion did not stop there. As founder and CEO of Writer Resource (a company in direct competition with Orbis), Ms. Gullion has solicited at least one prospective employee and prospective client of Orbis, in violation of the non-solicitation obligations of her Agreement.

9.     As a Vice President reporting directly to the President, Ms. Gullion learned all she could from Orbis, taking the knowledge and information owned by Orbis with her to form a nearly identical business, Writer Resource, in violation of her Agreement.

10.     Orbis considers its proprietary information, trade secrets, and goodwill with its customers, including the proprietary information, trade secrets, and customer goodwill it acquired from WAI, among its most valuable assets and considers its business interests implicated by Ms. Gullion's actions to be of the highest importance to its operations.

11.     Ms. Gullion, however, has failed to acknowledge this reality and refused to cease operating Writer Resource in a manner that violates her continuing obligations to Orbis.

12.     Despite repeated requests by Orbis to resolve this matter, Ms. Gullion has forced Orbis's hand. Orbis now brings this action to stop Ms. Gullion from operating Writer Resource (or any other business) in direct competition with Orbis and in violation of her Agreement and for damages, declaratory, and injunctive relief as a result of Ms. Gullion's material breaches of the Agreement.

**PARTIES**

13.     Plaintiff Contiem f/k/a Orbis Technologies, Inc. is a Delaware corporation with its principal place of business located at 180 Admiral Cochrane Drive, Annapolis, Maryland 21401. Plaintiff is a global leader in providing services and competent content management solutions to its clients.

14.     Defendant Ms. Gullion is a resident of Lakeville, Minnesota. Ms. Gullion is a former employee of WAI and Orbis, a former phantom equityholder in WAI and the current Chief Executive Officer of Writer Resource, a direct competitor to Orbis.

15.     Defendant Writer Resource LLC is a Minnesota corporation with its principal place of business located at 18187 Ireglen Path, Lakeville, Minnesota 55044.

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over the claims alleged herein pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501.

17.     This Court has personal jurisdiction over Defendants pursuant Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Defendants transact business in the State of Maryland and have caused tortious injury to Orbis, a Maryland business, by acts and omissions inside of and outside of the state and derived substantial revenue from services performed on behalf of Orbis. This Court also has personal jurisdiction over Defendants because the Agreement that Defendants breached is governed by Maryland law.

18.     Venue in this Court is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(11) because this is an action for damages against a nonresident individual. Venue in this Court is also proper pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(3) because Writer Resource has no principal place of business in the State and Plaintiff resides in Anne Arundel County.

4

## FACTUAL ALLEGATIONS

### A.    Orbis Acquires Writing Assistance, Inc. and Hires Ms. Gullion

19.    On August 31, 2022, Orbis entered into an APA with WAI, whereby Orbis purchased substantially all of WAI's rights, title and interest in all of WAI's assets and properties, whether real, personal, or mixed, tangible or intangible, including goodwill. *See* **Ex. A.** [Asset Purchase Agreement by and Among Orbis Technologies, Inc., Writing Assistance, Inc., Scott T. Hartmann and Lorí A. Hartmann] §2.1.

20.    WAI is a national staffing firm specializing in the placement of highly qualified writers, designers, and developers and is considered a leading resource for companies in need of qualified professionals.  Specifically, WAI specializes in the placement of technical writers, medical writers, science writers, graphic designers, and instructional designers worldwide.

21.    Importantly, Orbis purchased all of WAI's intellectual property that WAI owned or had the right to use or to which WAI was a party to, including, "the WAI Tracker database with all clients and candidates." *Id.* §2.1(c); *see also* Exhibit C to the APA at Schedule A.

22.    Prior to the August 2022 APA, Ms. Gullion spent her entire career at WAI and rose to the rank of Vice President of Sales and Recruiting during her 18-year tenure with WAI.

23.    Ms. Gullion was a phantom equityholder in WAI and as a result of the transactions consummated pursuant to the APA, WAI paid Ms. Gullion a $320,000 bonus.

24.    As part of the APA, Ms. Gullion resigned from employment with WAI and Orbis extended an offer of employment to Ms. Gullion on August 23, 2022, contingent upon the consummation of the transactions contemplated by the APA, to become the Vice President of Healthcare, Financial and Business Services at Orbis, with a start date of September 1, 2022. *See* **Ex B**. [Orbis Offer of Employment to Ms. Gullion].  Ms. Gullion accepted Orbis's offer of employment on August 24, 2022. *Id.*

B.  **Ms. Gullion Agrees to the Terms of the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement**

25.    On August 25, 2022, as a condition of her employment with Orbis, Ms. Gullion agreed to the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement (the "Agreement"). *See* **Ex. C.**

26.    In the Agreement, Ms. Gullion agreed for a period of one year following the termination of her employment with Orbis not to work with any company that competes with Orbis, which includes WAI pursuant to the APA.  Specifically, Ms. Gullion agreed, in relevant part, as follows:

> I agree that during the term of my employment with Company, and for one (1) year after my employment ends for any reason, I will not directly or indirectly compete with Company in any way, within the United States, by providing to a person or entity … in competition with Company.  The parties agree that for purposes of this Agreement, a person or entity is in competition with the Company if it provides cloud analytics, text analytics, and content management software and solutions. As such, I accept and agree that these restrictions allow me an adequate number and variety of employment alternatives, based on my varied skills and abilities.

*Id.* §11.

27.    Ms. Gullion agreed to Section 11 of the Agreement, "in recognition of the substantial time, money, and effort expanded by [Orbis] in the development of its confidential and proprietary information; the fact that [Ms. Gullion would] have access to and be personally entrusted with such confidential and proprietary information during [her] employment with [Orbis]; the high degree of competition in the field [Orbis] has chosen to engage in; the specialized knowledge and expertise that [Ms. Gullion] may develop as a result of [her] employment with [Orbis]; and the worldwide nature of [Orbis's] business." *Id.*

28.    Ms. Gullion additionally agreed to certain non-disclosure provisions in the Agreement:

All Proprietary Information is the sole property of the Company. I hereby do and will assign to Company all rights, title, and interest I may have or acquire in the Proprietary Information.  At all times, both during my employment by Company and after the termination of such employment, I will keep in confidence and trust all Proprietary Information, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary for the ordinary course of performing my duties as an employee of Company.

*Id.* § 3.

29.     Proprietary Information is any information in which the Company has any rights, including information relating to the Company's business that has value to the Company, which would include, but not be limited to, all client and operational related information to which you had access in the course and scope of your employment with the Company or as the result of any client relationships you developed or enhanced during your employment with the Company.  *Id.* § 2. "Proprietary Information" includes but is not limited to:

all technical and non-technical information, including patent, copyright, trade secret, and proprietary information, inventions, know-how, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of the Company, and includes, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, customer lists, business forecasts, sales and merchandising and marketing plans and information

*Id.*

30.     "Proprietary Information also includes proprietary or confidential information of any third party who may disclose such information to the Company or [Ms. Gullion] in the course of the Company's business." *Id.*

31.     The non-disclosure provisions of the Agreement extend to any information purchased, assigned, or otherwise acquired any rights to by Orbis from WAI under the APA, which states that Orbis purchased WAI's goodwill, Ex. A §2.1, as well as "all Intellectual Property that

[WAI] owns or has the right to use or which [WAI] is a party." *Id.* §2.1(c). These provisions, therefore, prohibited Ms. Gullion from using the "WAI Tracker database with all clients and candidates." *Id.*; *see also* Exhibit C to the APA at Schedule A.

32.    In addition to the non-competition and non-disclosure provisions, Ms. Gullion agreed to certain non-solicitation provisions:

> [D]uring the term of this Agreement and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt, or damage Company's relationship with any of its customers or customer prospects by soliciting or encouraging others to solicit any of them for the purpose of diversity or taking away business from Company.

Ex. C. §10.1.

33.    Finally, Ms. Gullion agreed that:

> [D]uring the term of this Agreement and for a period of (1) year after my employment ends, I will not, either directly or indirectly, separately or in occasion with others, (a) interfere with, impair, disrupt or damage Company's business by soliciting, encouraging or attempting to hire any of Company's employees or causing others to solicit or encourage any of Company's employees to discontinue their employment with Company.

*Id.* §10.2.

34.    The terms of the Agreement are governed by the laws of the State of Maryland. *Id.* §15.

**C.    Ms. Gullion Leaves Orbis and Forms Writer Resource, a Company in Direct Competition with Orbis and in Violation of her Agreement**

35.    On October 21, 2022 – less than two months after signing the Agreement and receiving her $320,000 transaction bonus – Ms. Gullion terminated her employment with Orbis with little to no warning.

36.    Shortly thereafter, in October 2022, Ms. Gullion founded Writer Resource, a direct competitor of Orbis/WAI. Ms. Gullion is currently the CEO of Writer Resource.

37.    Like WAI, Writer Resource "provide[s] clients with a wide range of services to cover all their needs," including, "Technical Writing, Medical Writing, Training Development, and Illustration." A comparison of Writer Resource's and WAI's websites demonstrate that Writer Resource offers nearly identical services to WAI:

| Writer Resource | WAI/Orbis |
|---|---|
| Illustration / Graphic Design | Web Designer / Graphic Illustrators |
| Technical Writing | Technical Writers |
| Medical Writing | Medical Writers |
| Editing/Editor Service | Editors |
| Training Development | Training Writers / Instructional Designers |
| | Marketing Writers |

38.    Writer Resource's description of the various services offered are strikingly similar to the description of services offered by WAI. As an illustrative example, a comparison of Writer Resource's description of its technical writing services is nearly identical to WAI's description of its technical writing services:

| Writer Resource | WAI/Orbis |
|---|---|
| SOPs | Standard Operating Procedures |
| Manuals | User Guides |
| Hardware and Software Documentation | Software Documentation / Hardware Documentation |
| Operational Documents | Operator Manuals |
| Maintenance Manuals | |

| | |
|---|---|
| Quality Assurance / Control Documentation | ISO 9000 |
| Policies and Procedures | Policy & Procedure Writing |
| Disaster Recovery Documentation | Disaster Recovery |
| Processes | Process Documentation |
| RFP, RFQ, RFI and Proposal Writing | Response to Technical RFPs Technical Proposals Proposals |
| Government Documentation | |
| | Installation Guides |
| | Technical Papers |

39.    As another illustrative example, a comparison of the Parties' descriptions of their illustration services are almost identical as well:

| Writer Resource | WAI/Orbis |
|---|---|
| Technical Illustration and Graphics | Patent Drawings |
| AutoCAD Drawings | Computer-Aided Design (CAD) |
| 3D Animation | |
| Logo Design | Logos and Corporate Identity Design |
| Engineering Illustrations | Engineering Illustrations |
| Photography | |
| | Design Icons |
| | Packaging and Signage |
| | Electronic Illustration |

40.     The descriptions of the other services provided by the Parties are no different.

41.     Prior to founding Writer Resource, Ms. Gullion held only one other job throughout her entire career: WAI, where she rose the ranks to senior executive and was a phantom equityholder.

42.     Orbis then purchased substantially all of WAI's assets, which resulted in Ms. Gullion becoming an employee of Orbis.

43.     When Ms. Gullion became employed with Orbis, she signed the Agreement as a means for Orbis to protect the value of the assets it just purchased, which included WAI's ATS tracker database.

44.     Ms. Gullion's entire industry "know-how" is based on WAI's Proprietary Information, which Orbis now owns.  Ms. Gullion left Orbis in October 2022 and used WAI's Proprietary Information, including the industry "know-how" she developed at WAI, to form Writer Resource.

45.     A comparison of the services offered demonstrates that Writer Resource is a direct competitor of Orbis.

46.     By founding Writer Resource and acting as Writer Resource's CEO, Ms. Gullion materially breached the non-competition and non-disclosure provisions of the Agreement.

**D.     As Founder and CEO of Writer Resource, Ms. Gullion Solicits a Prospective Client and Prospective Employee of Orbis in Violation of her Agreement**

47.     Ms. Gullion also materially breached the non-solicitation provisions of the Agreement.

48.     Ms. Gullion's husband, Corey Gullion ("Mr. Gullion"), is the CFO of Writer Resource and solicited a prospective employee of WAI who had previously done technical writing for a prospective client of Orbis.

49.     Specifically, on November 16, 2022, Mr. Gullion wrote to Suzanne Richter, "[t]hank you for reaching out regarding the Company SOP Technical Writer opportunity. We would love to set up a time to speak about this opportunity .... [T]he client is interested in moving quickly. Please send a couple of writing samples and indicate when you are available today." **Ex. D** [November 16, 2022 email from Corey Gullion to Suzanne Richter].

50.     The next day, on November 17, 2022, Ms. Richter responded to Mr. Gullion with her availability and attached "an Accounts Receivables Conversion SOP [she] wrote for HMS and the first 15 pages of a User Acceptance Testing Operating Guide [she] wrote for PharmaNet." *Id.*

51.     Mere hours later, Mr. Gullion (accidentally) forwarded Ms. Richter's response and attachments to Ms. Gullion's Orbis email account. *Id.*

52.     Significantly, Ms. Richter is listed as a prospective employee in ATS Tracker database Orbis purchased from WAI in the APA. In general terms, an ATS tracker, like the one Orbis acquired from WAI, is a software used for employers to track candidates through the recruiting and hiring process.

53.     In addition, PharmaNet – a company Ms. Richter provided technical writing services for in the past – is listed in the ATS tracker database Orbis purchased from WAI as a prospective client.



54.     The email exchange between Mr. Gullion of Writer Resource and Ms. Richter is clear evidence that Ms. Gullion was soliciting at least one prospective employee and at least one prospective client of Orbis and using Orbis's Intellectual Property to do so.

55.     By soliciting both a prospective employee and a prospective client of Orbis, Ms. Gullion materially breached the non-solicitation provisions of the Agreement in addition materially breaching the non-competition and non-disclosure provisions of the Agreement.

**E.     Orbis Informs Ms. Gullion of her Material Breaches of her Agreement and Attempts to Reach Resolution Without Seeking Relief in this Court**

56.     On December 22, 2022, undersigned counsel wrote to Ms. Gullion and advised Ms. Gullion that Writer Resource is a direct competitor of Orbis and that her employment with Writer Resource directly violates her continuing legal obligations to Orbis, including her non-competition and non-disclosure obligations under the Agreement. *See* **Ex. E** at 1 [December 22, 2022 Letter from Orbis to Ms. Gullion].

57.     In the letter, Orbis informed Ms. Gullion that its "proprietary information, trade secrets, and goodwill with its customers are among its most valuable assets," and that it considered its "business interests implicated by [Ms. Gullion's] actions to be of the highest importance to its operations." *Id.* at 2.

58.     Orbis requested that Ms. Gullion "immediately cease engaging in a business that is in direct competition with Orbis in violation of the non-competition provision of [her] Agreement and desist from engaging in any other activity in the future that is in violation of any provision of [her] Agreement." *Id.*

59.     Orbis further requested that Ms. Gullion provide, no later than Friday, December 30, 2022, "a sworn, written verification stating:  (1) the date you provided Writer Resource with a copy of your Agreement, (2) your agreement to comply with your continuing obligations to Orbis, including those outlined herein, (3) confirmation that you have returned, and are no longer in possession of, any Orbis Confidential and Proprietary Information, and (4) confirmation that you are not in possession of, and have not wrongfully disclosed, any Orbis Confidential or Proprietary Information." *Id.*

60.     Ms. Gullion, however, did not provide a sworn verification at all, much less the sworn written verification as requested by Orbis.  Rather, Ms. Gullion's counsel called undersigned counsel on December 27 and followed up with an email to undersigned counsel on December 28, where he wrote:

> As we discussed, Ms. Gullion started a staffing agency that does not violate the [Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement ("**Agreement**")] between the parties. She is not using any property that belongs to, or belonged to Orbis. She understands the Agreement and the specific competition outlined in the Agreement and has no interest in violating it. She has enough business and is not interested in a legal matter. Ten or more employees left in a short amount of time and it is understandable that Orbis may think that Ms. Gullion is working with former employees, she is not. Lastly, if

anything specific comes up please reach out to me immediately so I may address it with Ms. Gullion as she has no interest in violating the Agreement.

61.    On February 2, 2023, Orbis sent a second letter to Ms. Gullion's counsel where it reiterated the requests made in its December 22 letter. *See* **Ex. F** [February 2, 2023, Letter from Orbis to Ms. Gullion].

62.    Again, Ms. Gullion failed to provide the sworn written verification requested by Orbis and failed to provide any sworn written verification at all. Instead, on February 6, 2023, Ms. Gillion's lawyer responded by letter, among several things, by making baseless accusations against Orbis and stating that "Ms. Gullion has adhered to the Agreement." *See* **Ex. G** [February 6, 2023, Letter from Ms. Gullion to Orbis].

63.    On March 6, 2023, Orbis responded and took a different approach to potential resolution by asking that Ms. Gullion provide undersigned counsel on an "attorneys' eyes only" basis a list of Writer Resource's clients, including all signed statements of work, contracts, and templates by Friday March 10, so that undersigned counsel could verify that Ms. Gullion has not violated any terms of her Agreement. *See* **Ex. H** [March 6, 2023, Letter from Orbis to Ms. Gullion].

64.    In a telling admission, Ms. Gullion responded on March 9, refusing to provide undersigned counsel with the information it had requested and stating the following:

> ***To the best of my knowledge, I, and in turn Writer's Resource, have no contracts with any contracted Clients that Orbis had when they acquired WAI or when I left Orbis.***

*See* **Ex. I** [March 9, 2023, Letter from Ms. Gullion to Orbis] (Emphasis Added).

65.    Orbis responded on March 31, noting that Ms. Gullion's March 9 response raised more questions than answers:

First, Ms. Gullion's response only states that Writer's Resource is not *contracting* with Orbis's customers. It does not state that Writer's Resource is not doing business, has not done business, or is not soliciting any of Orbis's customers, which would all be violations of her Agreement. Second, Ms. Gullion's response incorrectly limits Orbis's clients to those who were clients at the time Orbis acquired WAI and those who Orbis had when Ms. Gullion departed the Company. It does not contemplate prospective customers of Orbis or customers that Orbis's [sic] contracted with *after* the acquisition of WAI, both of which are covered by Ms. Gullion's Agreement. Ms. Gullion's response, therefore, appears to be an admission that Ms. Gullion is actively violating the terms of her Agreement. What's more, Ms. Gullion's response wholly ignored Orbis's request in its March 6 letter.

*See* **Ex. J** [March 31, 2023, Letter from Orbis to Ms. Gullion] (Emphasis in Original).

66.    Ms. Gullion responded on April 24, denying (once again) any wrongdoing and declining (once again) to provide any information to undersigned counsel to allow them to verify Ms. Gullion's continued assertions that she is not in violation of the Agreement. **Ex. K** [April 24, 2023, Letter from Ms. Gullion to Orbis]. Ms. Gullion further made clear that she "will not respond to any further letters." *Id.*

67.    Orbis now brings this action to stop Ms. Gullion from operating Writer Resource (or any other business) in direct competition with Orbis and in violation of her Agreement and for damages, declaratory, and injunctive relief as a result of Ms. Gullion's material breaches of the Agreement, including the non-disclosure and non-solicitation provisions of the Agreement.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief against Defendants Gullion and Writer Resource)

68.    Orbis incorporates by reference the allegations in paragraphs 1-67 above.

69.    As Founder and CEO of Writer Resource, Ms. Gullion has caused and will continue to cause Orbis irreparable harm and injury, in that Ms. Gullion has engaged in a business that is in direct competition with Orbis and has solicited at least one prospective employee and prospective client of Orbis, all in violation of her Agreement.

70.     Orbis has no adequate remedy at law to prevent and compensate for the continuing wrong and irreparable injury caused by Ms. Gullion's acts and omissions.

71.     Considering the irreparable harm and injury to Orbis by Ms. Gullion operating a business in direct competition with Orbis in violation of her Agreement, as compared to enforcing the narrowly tailored terms of the Agreement, a remedy in equity is warranted.

72.     Preventing Ms. Gullion from operating Writer Resource in a manner that violates her Agreement for one year as she contracted will not disserve the public interest.

### SECOND CLAIM FOR RELIEF

**(Material Breach of Ms. Gullion's Agreement)**

73.     Orbis incorporates by reference the allegations in paragraphs 1-67 above.

74.     The Agreement is an enforceable and valid contract.

75.     In November 2022, Ms. Gullion founded Writer Resource, a company in direct competition with Orbis. Ms. Gullion is currently the CEO of Writer Resource.

76.     As the CEO of Writer Resource, Ms. Gullion has willfully solicited at least one prospective employee and prospective client of Orbis.

77.     Ms. Gullion's actions violate her continuing obligations to Orbis under the Agreement.

78.     Specifically, Ms. Gullion's actions constitute material breaches of her Agreement, including but not limited to, §§ 3 (non-disclosure), 10.1 (non-solicitation), 10.2 (non-solicitation), and 11 (non-competition) of the Agreement.

79.     Ms. Gullion signed in the Agreement, in part, as "recognition of the substantial time, money, and effort expanded by [Orbis] in the development of its confidential and proprietary information; the fact that [Ms. Gullion would] have access to and be personally entrusted with

such confidential and proprietary information during [her] employment with [Orbis]; the high degree of competition in the field [Orbis] has chosen to engage in; the specialized knowledge and expertise that [Ms. Gullion] may develop as a result of [her] employment with [Orbis]; and the worldwide nature of [Orbis's] business." Ex. C § 11.

80.    Put differently, Orbis's "proprietary information, trade secrets, and goodwill with its customers are among its most valuable assets." Ex. E at 2.

81.    Ms. Gullion's material breaches of the Agreement have affected the purpose of the Agreement in an important and vital way, such that it defeats the object of the parties entering into the Agreement.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment)

82.    Orbis incorporates by reference the allegations in paragraphs 1-67 above.

83.    There is an actual, definite and concrete controversy of sufficient immediacy and reality between the parties as to their obligations and rights under the Agreements.  As such, the issuance of a declaratory judgment in Orbis's favor is warranted.

84.    Orbis seeks a declaratory judgment that the Agreement is valid and enforceable.

85.    Orbis further seeks a declaratory judgment that Ms. Gullion is prohibited from using or disclosing Orbis's proprietary and confidential information at any time and, until October 21, 2023, is prohibited from soliciting any current or prospective clients of Orbis, including clients with whom Ms. Gullion worked with and had obtained confidential information about during her employment with WAI or Orbis.

86.     Issuance of a declaratory judgment will serve to settle the rights and other legal relations that exist between the parties and eliminate uncertainty as to the scope and content of the present legal obligations.

## FOURTH CLAIM FOR RELIEF

**(Tortious Interference with Prospective Business Relations against Defendants Gullion and Writer Resource)**

87.     Orbis incorporates by reference the allegations in paragraphs 1-67 above.

88.     As the CEO of Writer Resource, Ms. Gullion has willfully solicited at least one prospective employee and prospective client of Orbis in violation of her Agreement and for the purpose of diverting business away from Orbis and to Writer Resource.

89.     Given the express terms of her Agreement preventing Ms. Gullion from soliciting prospective business of Orbis, Ms. Gullion did not act justifiably or with proper cause.

90.     Ms. Gullion's actions in soliciting at least one prospective employee and prospective client of Orbis has caused Orbis to lose prospective business as well as lost profits.

## FIFTH CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets against Defendants Gullion and Writer Resource)**

91.     Orbis incorporates by reference the allegations in paragraphs 1-67 above.

92.     As a result of the August 2022 APA between Orbis and WAI, Orbis acquired and became the owner of substantially all the assets of WAI, including but not limited to WAI's trade secrets.

93.     When Ms. Gullion became employed with Orbis from WAI, she signed the Agreement as a means for Orbis to protect the value of the assets it just purchased, including the commercial value of WAI's trade secrets.

94.     Ms. Gullion further assigned all rights, title, and interest she may have or acquire in Orbis's proprietary information, including WAI's trade secrets, to Orbis, and agreed that she would not use or disclose Orbis's trade secrets without the written consent of Orbis.

95.     Despite the terms of the Agreement, Ms. Gullion terminated her employment with Orbis and founded Writer Resource, a direct competitor and nearly identical company to Orbis. Ms. Gullion formed Writer Resource, at least in part, by misappropriating Orbis's trade secrets as evidenced by the fact, among others, that both companies offer nearly identical services and operate in the same vertical market.

96.     Prior to the August 2022 APA, Ms. Gullion spent her entire career at WAI and held no other positions. Everything Ms. Gullion learned about the vertical market Writer Resource and Orbis operate in is attributable to WAI's proprietary information, which Orbis now owns, and Ms. Gullion assigned her rights to.

97.     Orbis did not provide written consent to Ms. Gullion to use its trade secrets or other proprietary information as required by the Agreement. Ms. Gullion, therefore, knowingly obtained Orbis's trade secrets through improper means.

**SIXTH CLAIM FOR RELIEF**

**(Civil Conspiracy against Defendants Gullion and Writer Resource)**

98.     Orbis incorporates by reference the allegations in paragraphs 1-67 above.

99.     For the reasons set forth above, Defendants Gullion and Writer Resource have committed tortious interference with business relations by, among numerous actions, soliciting at least one prospective employee and prospective client of Orbis in violation of Ms. Gullion's Agreement and for the purpose of diverting business away from Orbis and to Writer Resource.

100.    Given Ms. Gullion's position as CEO, Writer Resource was aware of the prohibitions in Ms. Gullion's Agreement yet nevertheless solicited at least one prospective employee and prospective client of Orbis.

101.    Ms. Gullion and Writer Resource knowingly and intentionally acted in concert to interfere in Orbis's business relations for the purpose of diverting business away from Orbis and to Writer Resource.

102.    As a result of Defendants campaign of interference, Orbis has lost prospective business as well as lost profits, and is threatened with irreparable additional loss and damage.

**PRAYER FOR RELIEF**

**WHEREFORE,** Orbis requests that the Court:

A.    Enter a preliminary and permanent injunction restraining Ms. Gullion and Writer Resource from operating its business (or engaging in any other business) in a manner inconsistent with the terms of the Agreement;

B.    For an expedited hearing and issuance of a preliminary injunction preventing continuing injury to Orbis during the course of these proceedings;

C.    Award compensatory damages for the harm caused and lost profits resulting from Ms. Gullion's material breaches of the Agreement;

D.    Award compensatory damages for the harm caused and lost profits from Ms. Gullion's and Writer Resource's tortious interference with prospective business relations and misappropriation of trade secrets;

E.    Issue a declaratory judgment that the Agreement is valid and enforceable;

F.    Issue a declaratory judgment that Ms. Gullion is prohibited from using or disclosing Orbis's proprietary and confidential information at any time and, until October 21, 2023, and

21

is prohibited from soliciting any current or prospective clients of Orbis, including clients with whom Ms. Gullion worked with and had obtained confidential information about during her employment with WAI or Orbis;

    G.     Award damages for civil conspiracy as requested in its Sixth Claim for Relief;

    H.     For court costs, other costs associated with these proceedings and reasonable attorneys fees;

    I.     For such other and further relief as the Court may deem just and proper and the nature of this proceedings require.

Dated: May 19, 2023                      Respectfully submitted,

                                  **DLA PIPER LLP (US)**

                                  */s/ Daniel E. Larkins*
                                  Daniel E. Larkins (AIS No. 1912180005)
                                  6225 Smith Avenue
                                  Baltimore, MD 21209
                                  T: (410) 580-4484
                                  F: (410) 580-3001
                                  daniel.larkins@us.dlapiper.com

                                  Marc D. Katz (*pro hac vice* forthcoming)
                                  1900 N. Pearl St., Ste. 2200
                                  Dallas, TX 75201
                                  T: (214) 743-4534
                                  F: (214) 743-4545
                                  marc.katz@us.dlapiper.com

                                  *Attorneys for Contiem f/k/a/ Orbis Technologies, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff Contiem f/k/a Orbis Technologies, Inc. requests that the captioned case and all claims asserted therein be tried by a Jury.

Dated: May 19, 2023

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Daniel E. Larkins
Daniel E. Larkins (AIS No. 1912180005)
6225 Smith Avenue
Baltimore, MD 21209
T: (410) 580-4484
F: (410) 580-3001
daniel.larkins@us.dlapiper.com

Marc D. Katz (*pro hac vice* forthcoming)
1900 N. Pearl St., Ste. 2200
Dallas, TX 75201
T: (214) 743-4534
F: (214) 743-4545
marc.katz@us.dlapiper.com

*Attorneys for Contiem f/k/a/ Orbis Technologies, Inc.*