**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>

|  |  |  |
|---|---|---|
| | * | |
| **CONTIEM, f/k/a ORBIS** | * | |
| **TECHNOLOGIES, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-23-2511** |
| **v.** | * | |
| | * | |
| **KIM GULLION, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

Contiem f/k/a Orbis Technologies, Inc. ("Orbis") brings this action against Kim Gullion and Writer Resource LLC ("WRL") (collectively, "Defendants"), alleging breach of contract and violation of the Maryland Uniform Trade Secrets Act ("MUTSA"). ECF 7 (Am. Compl.). This matter before the Court is on Defendants' Motion to Dismiss (the "Motion"). ECF 16. The Motion is fully briefed, and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Motion shall be granted.

## I.    FACTUAL BACKGROUND

Orbis is a Delaware corporation with its principal place of business in Annapolis, Maryland. Am. Compl. ¶ 13. Gullion is a resident of Lakeville, Minnesota, and WRL is a Minnesota corporation with its principal place of business in Lakeville, Minnesota. *Id.* ¶¶ 14–15; ECF 16-2 ("Gullion Decl.") ¶¶ 2, 9.

On August 31, 2022, Orbis entered into an asset purchase agreement with Writing Assistance, Inc. ("WAI") "whereby Orbis purchased substantially all of WAI's rights, title and

interest in all of WAI's assets and properties, whether real, personal, or mixed, tangible or intangible, including goodwill." Am. Compl. ¶ 22; ECF 7-1 (Asset Purchase Agreement); Gullion Decl. ¶ 4. As of August 2022, Gullion had worked at WAI at for eighteen years, and she was the company's Vice President of Sales and Recruiting at the time of the purchase. Am. Compl. ¶ 25. Following the asset purchase agreement, Gullion received a $320,000 bonus and the offer of a senior-level position with Orbis. *Id.* ¶ 3; ECF 7-2 (Orbis Offer of Employment); Gullion Decl. ¶ 4. Gullion accepted the position and started as Orbis's Vice President of Healthcare, Financial and Business Services on September 1, 2022. Am. Compl. ¶ 27; Gullion Decl. ¶ 4.

Along with the offer of employment, Gullion signed the Assignment of Inventions, Non-Disclosure, Non-Solicitation, and Non-Competition Agreement (the "Agreement"). Am. Compl. ¶ 28; ECF 7-3; Gullion Decl. ¶ 4. Gullion agreed that for one year following the termination of her employment with Orbis, she would not work for or with any of Orbis's competitors, nor would she solicit Orbis's clients or customers. Am. Compl. ¶¶ 29, 36–37; ECF 7-3 (the Agreement) ¶¶ 10–11. She also agreed to keep Orbis's proprietary information confidential. Am. Compl. ¶¶ 31–34; ECF 7-3 ¶¶ 2–5. The Agreement includes a Maryland choice-of-law provision. Am. Compl. ¶ 38; ECF 7-3 ¶ 15 ("This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of Maryland.").

As part of her employment with Orbis, Gullion attended "all-day internal client services meetings" in Annapolis, Maryland on September 14 and 15, 2022. Am. Compl. ¶¶ 39–40; Gullion Decl. ¶ 6. During these meetings, Orbis executives and senior employees discussed product and company information generally unknown to the public, including "clients and client services, revenue, company objectives and priorities, and sales." Am. Compl. ¶¶ 39–40.

On October 14, 2022, Gullion submitted formal notice of resignation, and her employment with Orbis terminated on October 21, 2022. *Id.* ¶ 35; Gullion Decl. ¶ 7. Orbis alleges that before she left the company, Gullion contacted various client liaisons, telling them to keep in touch. Am. Compl. ¶¶ 44–46. According to Orbis, on October 20, 2022, Gullion "downloaded several documents and folders from Orbis's server including but not limited to the following: (i) her email mailbox; (ii) a 'drafts' folder; (iii) an 'archive' folder; (iv) a 'deleted items' folder, and (v) an offline address book," as well as the calendar of the Orbis CEO's executive assistant. *Id.* ¶ 47. Orbis's server is located in Maryland. *Id.* ¶ 48.

After leaving Orbis, Gullion founded WRL, a Minnesota-based staffing and recruiting agency for writers, for which she serves as CEO. *Id.* ¶¶ 50–51; Gullion Decl. ¶¶ 9–10 ("I am [WRL's] CEO and only member."). Orbis claims that WRL competes with Orbis and that Gullion is thereby in breach of the Agreement. Am. Compl. ¶¶ 68–71. At least 26 Orbis clients listed in the Amended Complaint terminated their relationship with Orbis when WRL was formed. *Id.* ¶ 72. Orbis specifically alleges that Gullion solicited four of these businesses, which are based in Maryland or have offices in Maryland. *Id.* ¶ 77.

Gullion has submitted a declaration for the Court's consideration. ECF 16-2. In her declaration, Gullion states that she was working for WAI in Minnesota when it was purchased by Orbis in August 2022 and Orbis offered employment her and other WAI employees. *Id.* ¶ 4. In September 2022, Gullion began working for Orbis from her home in Minnesota. *Id.* ¶ 5. Orbis required Gullion to attend an in-person meeting at Orbis's office in Annapolis, Maryland on September 14 and 15, 2022. *Id.* ¶ 6. This was Gullion's only visit to Maryland. *Id.* Gullion subsequently left Orbis and formed WRL in Minnesota. *Id.* ¶ 9. As of October 20, 2023, WRL had

eight clients and two prospective clients, none of which are based in Maryland or listed in the Amended Complaint as clients of Orbis. *Id.* ¶ 11.

## II.     PROCEDURAL BACKGROUND

On May 19, 2023, Orbis filed its initial Complaint in the Circuit Court of Maryland for Anne Arundel County. ECF 6.[1] Orbis filed an Amended Complaint on August 23, 2023, asserting claims for breach of contract and tortious misappropriation, and seeking damages and declaratory and injunctive relief. Am. Compl. ¶¶ 96–130. On September 15, 2023, Defendants removed the case to the United States Court for the District Court of Maryland, ECF 1, and on October 30, 2023, they filed a Motion to Dismiss, ECF 16. Orbis subsequently filed an opposition to the Motion, ECF 17, and Defendants filed a reply in support of the Motion, ECF 20.

## III.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure tests whether the federal district court is permitted to exercise personal jurisdiction over a defendant in a specific case. *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018). "Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'" *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see also Grayson*, 816 F.3d at 267 (same).

---

[1]     The same day, May 19, 2023, Defendants filed a suit for declaratory relief against Orbis in the United States District Court for the District of Minnesota. *Gullion, et al. v. Orbis Techs., Inc.*, No. 23-cv-1430-ECT/JFD (D. Minn. May 19, 2023), ECF 1.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. In its discretion, a court may also permit discovery as to the limited issue of jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). However, neither discovery nor an evidentiary hearing is required to resolve a motion under Rule 12(b)(2). *See generally* Wright & Miller, Fed. Prac. & Proc. § 1351 (4d Ed. 2019).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction, assuming they are true, make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.*

## IV.     ANALYSIS

Defendants move to dismiss this action for lack of personal jurisdiction. ECF 16-1 at 4–13. Orbis argues that the Court has specific personal jurisdiction over Defendants. ECF 17 at 6–14. The Court agrees with Defendants that it lacks personal jurisdiction over them and will therefore dismiss the Complaint.

### A. Personal Jurisdiction Generally

There are two forms of personal jurisdiction: general and specific. *E.g.*, *Ford Motor Co.*, 592 U.S. 351, 358 (2021). A court has general jurisdiction over a defendant when his contacts with

the forum state are so "continuous and systematic" as to render the defendant "at home" in the

forum state. *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 918–19 (2011).

The court has specific jurisdiction over a defendant "[i]f the cause of action arises out of the

defendant's minimum contacts with the forum[.]" *Cong. Bank v. Potomac Educ. Found., Inc.*, Civ.

No. PWG-13-889, 2014 WL 347632, at *3 (D. Md. Jan. 30, 2014) (quoting *Tawney v. AC & R*

*Insulation Co.*, Civ. No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013)).

For a district court to exercise personal jurisdiction over a defendant, "(1) [the] state's long-

arm statute must authorize the exercise of jurisdiction under the facts presented, and (2) the

statutory assertion of personal jurisdiction must comply with due process." *Wallace v. Yamaha*

*Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *2 (4th Cir. Jan. 6, 2022) (citing *Ellicott*

*Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)). Maryland's long-arm

statute provides in part:

> A court may exercise personal jurisdiction over a person, who
> directly or by an agent . . . [t]ransacts any business or performs any
> character of work or service in the State; . . . [c]auses tortious injury
> in the State by an act or omission in the State; . . . [or] [c]auses
> tortious injury in the State or outside of the State by an act or
> omission outside the State if he regularly does or solicits business,
> engages in any other persistent course of conduct in the State or
> derives substantial revenue from goods, food, services, or
> manufactured products used or consumed in the State . . . .

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), (3), (4).[2] Maryland's long-arm statute is

coextensive with the due process clause of the Fourteenth Amendment to the U.S. Constitution.

---

[2]     These are the three provisions of the long-arm statute that Orbis invokes in its Amended Complaint
as grounds for personal jurisdiction of Defendants. Am. Compl. ¶ 17; *see Cong. Bank v. Potomac Educ.*
*Found., Inc.*, Civ. No. PWG-13-889, 2014 WL 347632, at *4 (D. Md. Jan. 30, 2014) ("[T]he 'statutory
provision authorizing jurisdiction' must be identified in the complaint.") (quoting *Tawney v. AC & R*
*Insulation Co.*, Civ. No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013)).

*See, e.g.*, *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)).

Orbis argues that this Court has specific jurisdiction over Defendants pursuant to § 6-103(b)(1), (3), and (4). Am. Compl. ¶ 17; ECF 17 at 5.[3] Specifically, Orbis asserts that the exercise of personal jurisdiction is proper because (1) Gullion misappropriated information obtained during a work conference in Annapolis, Maryland; (2) Gullion improperly accessed Orbis's Maryland-based server; (3) Gullion solicited four of Orbis's Maryland-based clients; and (4) Gullion caused tortious injury through acts done in Maryland. *Id.* at 6–12. Orbis further argues that personal jurisdiction is proper because the Agreement is governed by Maryland law under its choice-of-law provision. *Id.* at 12. Finally, Orbis argues that the Court also has personal jurisdiction over WRL because Gullion's contacts with Maryland are imputed to it[4] and that personal jurisdiction over both Defendants is constitutionally reasonable. *Id.* at 12–14.

### B. Personal Jurisdiction Under § 6-103(b)(1)

In Maryland, "[a] court may exercise personal jurisdiction over a person, who directly or by an agent transacts any business or performs any character of work or service in the State . . . ." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). This provision of the long-arm statute does not require the defendant's physical presence in the forum state. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009). However, "[a]n essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the

---

[3]    In its opposition, Orbis only asserts specific jurisdiction under § 6-103(b)(1) and (3), *see* ECF 17 at 5, the Amended Complaint additionally invokes § 6-103(b)(4), *see* Am. Compl. ¶ 17.[4] In the following analysis, the Court will assume Gullion's contacts with Maryland are imputed to WRL.
[4]    In the following analysis, the Court will assume Gullion's contacts with Maryland are imputed to WRL.

contact." *Id.* (citing *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002), and *Nueva Eng'g, Inc. v. Accurate Elec., Inc.*, 628 F. Supp. 953, 955 (D. Md. 1986)).

Orbis does not contend that Gullion initiated contact with Orbis at any stage of their business relationship. Gullion had lived and worked in Minnesota for almost two decades when Orbis, a Maryland-based company, purchased WAI, Gullion's Minnesota-based employer. Gullion Decl., ¶¶ 3–4. At the time of the purchase, Orbis offered Gullion a position, which she accepted remotely without any negotiation, and she performed work from her home in Lakeville, Minnesota. *Id.* ¶¶ 4–5. Although Gullion concedes that she came to Maryland for a work conference in Annapolis, she was only in the state for the purpose of attending the conference and has otherwise never stepped foot in the state. *Id.* ¶ 6. Gullion's attendance at the conference, without more, is insufficient to confer specific jurisdiction on either defendant.

Orbis cites two cases to argue that Gullion attending the conference is sufficient to satisfy Maryland's long-arm statute: *Ciena Corp. v. Jarrard*, 203 F.3d 312 (4th Cir. 2000), and *Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499 (4th Cir. 1985). Both cases are inapposite. In *Ciena Corp.*, the Fourth Circuit held that the defendant's contacts with Maryland were sufficient for the district court to exercise personal jurisdiction over her in Maryland. 203 F.3d at 318. The defendant made multiple visits to Maryland that were "regular and numerous," 203. F.3d at 318, while Gullion made a single two-day trip to Maryland, Gullion Decl. ¶ 6, and did not otherwise have frequent interactions with the forum state.

In *Hirschkop & Grad*, where a Virginia-based law firm sued clients for breach of contract arising from the representation, the Fourth Circuit held that there was personal jurisdiction over the clients under Virginia's long-arm statute because they engaged the plaintiff law firm to serve as their counsel in litigation for multiple years. 757 F.2d at 1503. Although the litigation occurred

in California, one of the clients initiated contact with the plaintiff law firm in Virginia and repeatedly reached into the state throughout the representation. *Id.* Here, Gullion did not initiate contact with Orbis; instead, it was Orbis that reached out to her to join the company following the asset purchase. Am. Compl. ¶ 3; ECF 7-2; Gullion Decl. ¶ 4.

Accordingly, the Court does not find that either Gullion or WRL has transacted any business or performed any work or service in Maryland sufficient to confer personal jurisdiction under § 6-103(b)(1).

### C. Personal Jurisdiction Under § 6-103(b)(3)

A court in Maryland may "exercise personal jurisdiction over a person who . . . [c]auses tortious injury in the State by an act or omission in the State . . . ." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3). "To satisfy § 6-103(b)(3), both the injury itself and the act giving rise to the injury must have occurred and originated in Maryland." *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 250 (D. Md. 2022) (citing *Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140 (Md. Ct. Spec. App. 1974)).

Here, Orbis alleges that Defendants misappropriated its trade secrets in violation of MUTSA. Am. Compl. ¶¶ 108–12. To prevail on a misappropriation claim under MUTSA, a plaintiff must show that (1) the property at issue qualifies for protection as a trade secret and (2) the defendant misappropriated the property. *E.g.*, *Brightview Group, LP v. Teeters*, Civ. No. SAG-19-2774, 2021 WL 1238501, at *4 (D. Md. Mar. 29, 2021) (citation omitted). "Misappropriation" is defined in the statute as the "(1) [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) [d]isclosure or use of a trade secret of another without express or implied consent" where specified conditions are met. Md. Code Ann., Com. Law § 11-1201(c). "Improper means" is defined as "theft, bribery,

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Md. Code Ann., Com. Law § 11-1201(b).

Orbis alleges that Gullion committed this tort by (1) acquiring Orbis's proprietary information during meetings in Annapolis, Maryland, in September 2022, while Gullion was employed by Orbis, and through a download from Orbis's server in October 2022; and (2) using and disclosing this information to form WRL and to solicit Orbis's clients. Am Compl. ¶¶ 109–10. The Court cannot find that the alleged misappropriation occurred in Maryland. Even assuming Orbis's allegations to be true and the proprietary information to constitute trade secrets, Gullion did not misappropriate the trade secrets during the meetings in Annapolis in September 2022 because, as an employee of Orbis at the time, she did not acquire the information by "improper means."

Assuming Gullion *did* misappropriate Orbis's trade secrets by downloading information from Orbis's Maryland-based server in October 2022, when she was no longer an employee, Orbis does not allege that Gullion was in Maryland at that time. *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) (§ 6-103(b)(3) was inapplicable because defendant's allegedly tortious conduct, the sending of a purportedly defamatory email, occurred in New Jersey); *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 813 (D. Md. 2010) (citing *Dring*); *Midtown Pers., Inc. v. Dave*, Civ. No. PWG-13-3493, 2014 WL 3672896, at *1 (D. Md. July 22, 2014) (no specific jurisdiction where the former employee sent the emails from Washington, D.C.); *Element Fleet Corp. v. Quimby*, Civ. No. GLR-18-1986, 2019 WL 1293275, at *1, *4 (D. Md. Mar. 19, 2019) (no specific jurisdiction where a former employee, a resident of New Hampshire, forwarded dozens of confidential work files to his personal email outside of Maryland).

Furthermore, Orbis does not allege that Gullion was in Maryland when she formed WRL or solicited Orbis's clients. *Cf. Intellor Grp., Inc. v. Cicero*, Civ. No. TDC-19-0010, 2019 WL 1643549, at \*7 (D. Md. Apr. 16, 2019) ("'[I]n breach of confidence and misappropriation cases involving application of the lex loci delicti rule, many courts have held that the injury occurs when the information is improperly used' and occurs at the location where it is used improperly to develop a new . . . .") (citation omitted).

Because Orbis cannot show that Gullion committed the alleged misappropriation in Maryland, § 6-103(b)(3) does not confer specific jurisdiction over her.

### D. Personal Jurisdiction Under § 6-103(b)(4)

In Maryland, "[a] court may exercise personal jurisdiction over a person who . . . causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . . ." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(4).

Some Courts in this District have interpreted § 6-103(b)(4) to be "a general jurisdiction statute." *Orbita Telecom*, 606 F. Supp. 3d at 250 (citations omitted); *see also Cox v. Ritz-Carlton Hotel Co. of Mexico, S.A. DE C.V.*, Civ. No. RDB-05-2556, 2006 WL 3313773, at \*3 (D. Md. Nov. 9, 2006). The language of the statute clearly "'require[s] greater contacts that those necessary to establish jurisdiction under [other subsections of Maryland's long-arm statute].'" *Cong. Bank*, 2014 WL 347632, at \*5 (quoting *Metro. Reg'l Info. Sys. v. Am. Home Realty Network*, 888 F. Supp. 2d 691, 698 (D. Md. 2012)).

Orbis does not contend that this Court has general jurisdiction over Defendants, ECF 17 at 6 n.3, and does not allege that Gullion had sufficient contacts to be subjected to personal

jurisdiction under § 6-103(b)(4). Orbis alleges that Gullion "solicits business in Maryland and derives substantial revenue from the services she provides in Maryland[,]" Am. Compl. ¶ 17, but offers no facts or evidence to support this conclusory assertion.

Gullion, for her part, declares that WRL has no Maryland-based clients or prospective clients and has never solicited any of the companies listed in the Amended Complaint. Gullion Decl. ¶ 11. Defendants attach to their reply a separate declaration and records establishing that, of the four Maryland-based businesses Orbis accuse Defendants of soliciting, *see* Am. Compl. ¶ 77, only one—Medimmune—is domiciled in Maryland, ECF 20-1. Thus, of the 26 clients that Orbis insinuates were wrongfully solicited by Defendants, *see* Am. Compl. ¶ 72, only one is based in Maryland, and it is not a client or prospective client of Defendants. *Cf. ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (defendant's contacts with forum state were insufficient to confer specific jurisdiction where it solicited various companies across North America and only one was located in the forum state and that solicitation did not result in any sales).

Accordingly, the Court does not find that Defendants' contacts with Maryland are sufficient to confer specific jurisdiction over them in Maryland under § 6-103(b)(4).[5]

### E.  Choice-of-Law Provision

Orbis contends that this Court should exercise personal jurisdiction over Defendants on account of the choice-of-law provision in the Agreement, which Gullion signed. ECF 17 at 12 (citing ECF 7-3).

---

[5]     Because Plaintiff has failed to establish this Court's personal jurisdiction under Maryland's long-arm statute, a separate due process analysis is not necessary. *See Baumgarten v. Belsky*, Civ. No. GJH-19-374, 2020 WL 3447753, at *2 (D. Md. June 24, 2020); *Winter v. Pinkins*, Civ. No. JKB-14-2125, 2014 WL 5500393, at *4 (D. Md. Oct. 29, 2014).

The Agreement does contain a choice-of-law provision, dictating that it is to be governed by Maryland law. ECF 7-3, ¶ 15. But "unlike valid forum selection clauses which may waive objections to personal jurisdiction,[] a choice-of-law provision is not dispositive on th[e] issue [of personal jurisdiction] . . . . [T]he provision's mere presence in the contract is insufficient to constitute 'purposeful availment[.]'" *Perdue Holdings, Inc. v. BRF S.A.*, 45 F. Supp. 3d 514, 517–18 (D. Md. 2014), *aff'd sub nom. Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185 (4th Cir. 2016); *see also Pharmabiodevice Consulting, LLC v. Evans*, Civ. No. GJH-14-00732, 2014 WL 3741692, at *6 (D. Md. July 28, 2014) ("Given [the defendant's] lack of relevant contacts with Maryland, the Court is not persuaded that the inclusion of a Maryland choice of law provision in [her] Consultant Agreement evinces any intent on [her part] to submit herself to personal jurisdiction in the state whose law governs the interpretation of her Consultant Agreement.") (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 (4th Cir. 2009)).

Accordingly, the choice-of-law provision alone, without satisfying any requirement of the long-arm statute, will not suffice to confer specific personal jurisdiction over Defendants.

## F. Jurisdictional Discovery

Orbis requests jurisdictional discovery should the Court find its showing of personal jurisdiction over Defendants to be insufficient. ECF 17 at 11, 14. Although limited discovery is appropriate in some cases, a district court has the discretion to deny jurisdictional discovery where "the 'additional information' sought would not 'alter [the] analysis of personal jurisdiction.'" *D2L Ltd. v. Biggs*, Civ. No. CCB-18-2994, 2019 WL 3975656, at *4 (D. Md. Aug. 22, 2019) (quoting *Carefirst of Maryland*, 334 F.3d at 403); *see also Williams v. Romarm S.A.*, 116 F. Supp. 3d 631, 643 (D. Md. 2015) (jurisdictional discovery cannot be used as a "fishing expedition in hopes of discovering some basis of jurisdiction") (citation omitted). Given Gullion's declaration denying

that she engaged any of the Orbis clients that terminated their relationships with Orbis after WRL was formed, the Court finds that permitting jurisdictional discovery in this case would be an inappropriate fishing expedition. *See also Orbita Telecom*, 606 F. Supp. 3d at 251 n.6 (denying plaintiff's request for jurisdictional discovery on the extent to which defendants solicited business in Maryland). Orbis's request for jurisdictional discovery is thus denied.

## V.     CONCLUSION

Defendants' Motion to Dismiss shall be GRANTED, and the Amended Complaint is hereby dismissed without prejudice.[6]

A separate Order shall follow.

___9/30/24___
Date

_____
Matthew J. Maddox
United States District Judge

---

[6]     Defendants have also moved to dismiss pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted. ECF 16-1 at 1. "Because the Court has determined that it lacks personal jurisdiction over Defendant[s], it need not address whether the [Amended] Complaint actually states a claim for [breach of contract and tortious injury]." *Baumgarten*, 2020 WL 3447753, at *3 (D. Md. June 24, 2020).